IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MARTIN R. WASCHAK,
   Plaintiff,
     v.
THE ACUITY BRANDS, INC.
SENIOR MANAGEMENT BENEFIT
PLAN,
   Defendant.

CIVIL ACTION FILE
NO. 1:07-CV-3121-TWT

ORDER

This is an ERISA action involving the calculation of the Plaintiff's retirement benefits. It is before the Court on the Plaintiff's Motion for Attorney's Fees [Doc. 34]. For the reasons set forth below, the motion is GRANTED.

I. Introduction

The Plaintiff is a former vice president of Lithonia Lighting, now owned by the Defendant. At issue in this suit is the Defendant's Senior Management Benefit Plan ("the Plan"), which served as the Defendant's retirement plan for its more highly-compensated employees. The Plaintiff contributed to the Plan from its inception in 1985 for eight consecutive years. He retired on March 31, 1999, and began collecting his retirement benefits two years later on April 1, 2001. The monthly payments --

which include the Plaintiff's contributions plus interest earned on the contributions -- continue for a total of fifteen years.

The parties dispute how to calculate the interest component of the Plaintiff's benefit. Generally, the Plan calls for an employee's account to be credited annually with that year's interest earnings. (Pl.'s Mot. for Summ. J., Ex. A, §4.3). The amount of interest is determined by the Plan's "Interest Earnings Rate," which is 3 points higher than the Moody's Interest Rate. Moody's publishes its rates monthly; the interest earned is the twelve-month average of Moody's rates. (Id.) The Plan's provision for benefit payments states that:

> The amount payable for the first year hereunder shall be an amount that will fully amortize the balance in Participant's Deferred Benefit Account, as of the Participant's Benefit Determination Date, over the fifteen (15) year period, based on assumed interest earnings using the Interest Earnings Rate . . . as of said Benefit Determination Date. Thereafter, annually, on the Anniversary Date, the amount payable for the following year shall be adjusted to an amount that will fully amortize the remaining balance in Participant's Deferred Benefit Account, on said date, over the remaining years in the fifteen (15) year installment period, based on the Interest Earnings Rate. . . .

(Pl.'s Mot. for Summ. J., Ex. A, §5.5(a)). That provision is arguably qualified by § 5.4(a) of the Plan, which is titled "Determination of Retirement Benefits." (Pl.'s Mot. for Summ. J., Ex. A, §5.4(a)). That section declares that when an employee retires,

> a benefit shall be payable to such Participant ("Retirement Benefit") equal to the greater of: (i) the total amount of such Participant's Deferred Benefit Account . . . as of his Benefit Determination Date, including

interest at the Interest Earnings Rate, through such Benefit Determination Date; or (ii) the amount determined pursuant to Schedule B attached hereto and made a part hereof. . .

(Id.)

The Schedule B referenced in the Plan is titled "Summary of Guaranteed Minimum Annual Retirement Benefits" and lists an annual benefit, the Plaintiff's account balance at retirement, and the total retirement benefit. Schedule B provides that it is a "guaranteed minimum" because it calculates interest at a rate of 11%, regardless of the variable interest earnings rate. For years, this was interpreted by the Defendant to mean that the retiree was entitled to payment with interest of at least 11% for every year.

The genesis of this suit was the Defendant's decision to put greater weight on the "Benefit Determination Date" in paying retirement benefits. Before that date, the Defendant would credit the employee's account with the greater of the two interest rates. In other words, the Defendant guaranteed an 11% interest rate on the account while the employee was deferring benefits. After this deferment period, the employee would no longer enjoy a minimum interest rate and the account is credited only by the variable interest earning rate.

When the Plaintiff began contributing to his retirement plan, the interest earnings rate was nearly 14%. Since that time, the rate has (as a general trend)

declined. By the time the Plaintiff began collecting his benefits in 2002, the interest earnings rate was 10.46%. The rate dipped under 9% in the Defendant's 2005 fiscal year. After 5 years of paying a benefit based upon the minimum 11% rate, the Defendant reinterpreted the Plan to remove the interest floor after the Benefit Determination Date. It notified the Plaintiff and other retirees that its previous "misinterpretation has resulted in overpayments to you in the years where the Schedule B amount [with an interest floor] exceeded the Moody's plus 3 calculation." (Pl.'s Mot. for Summ. J., Ex. HH, at 1). This overpayment exceeded $12,000, but, as a courtesy, the Defendant did "not ask that [the Plaintiff] immediately return the overpayments in a lump sum." (Pl.'s Mot. for Summ. J., Ex. HH, at 2). The Defendant then offset the Plaintiff's benefit payments in addition to paying out a lower interest rate for the benefit calculation. The Plaintiff maintained that he is entitled to benefits calculated with a minimum interest rate of 11% and filed this action to recover the higher amount. Both parties moved for summary judgment.

The Court found that the relevant plan provisions were ambiguous as to whether a minimum interest rate applied. (See Order, at 8-12). Further, the Court found that the Plaintiff reasonably relied on the Defendant's various representations that his benefits were calculated using a guaranteed minimum rate. (Order, at 12-13). The Court concluded that the Defendant was equitably estopped from denying the

historic-level benefits to the Plaintiff and granted the Plaintiff's summary judgment motion.

## II. Discussion

### A. Attorney's Fees

An award of attorney's fees is appropriate in this case given the criteria adopted by the Eleventh Circuit in awarding attorney's fees in ERISA cases. ERISA provides that "[i]n any action under [the ERISA] subchapter. . .by a participant [or] beneficiary. . .the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). The Eleventh Circuit in McKnight v. Southern Life and Health Ins. Co., 758 F.2d 1566 (1985), has set forth five factors to be considered by the district court in deciding whether to award attorney's fees pursuant to 29 U.S.C. § 1132(g)(1):

> These factors include: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorney's fees; (3) whether an award of attorney's fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.

McKnight, 758 F.2d at 1571-72. No one factor is necessarily decisive, although the lack of bad faith alone can be conclusive. Id. at 1572; Andrews v. Employees' Retirement Plan of First Alabama Bancshares, Inc., 938 F.2d 1245, 1248 (11th Cir.

1991). The Eleventh Circuit has consistently followed the five factor analysis designated in McKnight. See Florence Nightingale Nursing Service, Inc. v. Blue Cross/Blue Shield of Alabama, 41 F.3d 1476, 1485 (11th Cir. 1995), cert. denied, 514 U.S. 1128 (1995); Freeman v. Continental Ins. Co., 996 F.2d 1116, 1119 (11th Cir. 1993). There is no presumption in favor of awarding attorney's fees under § 1132(g)(1); the prevailing party bears the burden of establishing its entitlement to an award of fees. See Freeman, 996 F.2d at 1119.

With regard to the first factor, the Defendant argues its lack of bad faith is displayed by the Court's previous observation that its position was "sensible." (Order, at 11). The Plaintiff has not shown that the Defendant acted in bad faith. It had a sensible interpretation of the Plan that supported its position. It notified the Plaintiff before it reduced benefits. Additionally, the Defendant attempted to soften the blow by reducing those benefits (and recouping the alleged overpayment) gradually. The Court also understands the desire to correct historical misinterpretations of a plan. Nevertheless, it demonstrated exceedingly grotesque selfishness in its treatment of retirees such as the Plaintiff.

Courts have placed weights on the bad faith factor ranging from not "necessarily decisive" to dispositive. Compare Wright v. Hanna Steel Corp., 270 F.3d 1336, 1345 (11th Cir. 2001) with Andrews, 938 F.2d at 1248 (total lack of bad faith

exhibited by fund when it placed disputed benefits in interpleader fund preempted attorney's fees) and Florence Nightingale Nursing Service, Inc., 41 F.3d at 1485 (district judge acted within his discretion by denying attorney's fees based upon the sole finding of lack of bad faith). Here, the absence of bad faith should not be determinative.

The second factor - often given short shrift compared to the others - favors the Plaintiff. The Defendant concedes it is able to pay the fees, so the minimal weight of this factor goes to the Plaintiff. The third factor likewise weighs in the Plaintiff's favor. The Defendant flatly states that the Plaintiff's "argument that the attorney's fees are warranted because consistency should prevail over accuracy is meritless." (Def.'s Br. in Opp'n to Pl.'s Mot. for Attorney's Fees, at 8). First, this view is distorted as it presumes its new interpretation is accurate, a question the Court did not address. More importantly, the Eleventh Circuit has found that "an award of attorney's fees would encourage other employers to furnish understandable and accurate summary plans upon which employees can reasonably rely in calculating their benefits." McKnight, 758 F.2d at 1572. In this case, the Defendant provided to the Plaintiff: (1) allegedly inaccurate calculations, called "Illustrations Depicting Projected Retirement Benefits At Various Retirement Ages," using a minimum interest earnings rate throughout the payment period (Pl.'s Mot. for Summ. J., Ex. F);

and (2) numerous "Projected Benefit Statements" that clearly stated a "minimum retirement benefit" also using a minimum interest rate. (Pl.'s Mot. for Summ. J., Ex. YY). The Defendant argued during the summary judgment stage that these representations were mere "illustrations" and that, essentially, the Plaintiff should have ignored them. (Order, at 12-13; Def.'s Br. in Opp'n to Pl.'s Mot. for Summ. J., at 20-22). Yet, if the Defendant had provided (what it now considers) more accurate illustrations of the plan in the first place, it could have avoided this litigation. More clarity in its sample calculations or projected benefits would certainly aid beneficiaries, and a deterrent value exists in this case.

This deterrent value exists apart the more generic concern that attorney's fees always deter the improper denial of benefits. Otherwise, "[w]ith nothing to lose but their own litigation costs, other ERISA-plan sponsors might find it worthwhile to force underfinanced beneficiaries to sue them to gain their benefits or accept undervalued settlements." Kinser v. Plans Administration Committee of Citigroup, Inc., No. 4:05-cv-86, 2008 WL 762200, at *3 (M.D. Ga. Mar. 18, 2008) (quoting National Companies, 929 F.2d at 1675); see also Stvartak v. Eastman Kodak Co., 945 F. Supp. 1532, 1546 (M.D. Fla. 1996). This policy does not match as precisely as does the stronger deterrent value against providing inaccurate or confusing information to beneficiaries. Combining the two, the Court finds that the third factor

clearly weighs in favor of an award of attorney's fees.

Broadly speaking, the fourth factor considers the impact of this case beyond the parties. The Plaintiff did not file this suit as a class action suit. And, the questions raised by this suit were not especially significant in a legal sense and are unique to the interpretation of the Plan in this case. However, the Plaintiff did request information on similarly situated individuals affected by the Defendant's new interpretation. The Defendant does not dispute that it declined to provide this information. Therefore, the weight against attorney's fees is largely mitigated considering the Defendant itself discouraged class representation. This factor weighs minimally in favor the Plaintiff.

As to the fifth and final factor, the strength of the parties' respective positions, both sides advanced "substantial arguments." McKnight, 758 F.2d at 1572. It is conceptually difficult to see how this factor could ever tilt against the prevailing party; perhaps it is best understood as a function that no attorney's fees are to be presumed in ERISA cases. The Court decided the case on narrow grounds of estoppel, only finding that the Plan was ambiguous and the Plaintiff reasonably relied on representations of a minimum interest rate. This factor is the more appropriate one to consider that the Defendant's arguments were "sensible," and it should not weigh in favor of attorney's fees. On balance the relevant factors weigh in favor of an award

of attorney's in favor of the Plaintiff.

  B. Other Costs

  The Plaintiff also seeks pre-judgment interest. A district court has the discretion to award pre-judgment interest in ERISA cases. Moon v. American Home Assurance Co., 888 F.2d 86, 89-90 (11th Cir. 1989). The chief consideration in awarding fees is making the winning party whole. Hembree v. Georgia Power Co., 637 F.2d 423, 430 (5th Cir. 1981). A finding of bad faith is not necessary to justify an award of fees. Id. The Defendant simply argues that an award of interest is not necessary because the Defendant only acted to correct a misinterpretation, and therefore nothing is needed to make the Plaintiff whole. (Def.'s Br. in Opp'n to Pl.'s Mot. for Attorney's Fees, at 10). However, the Court found that the reduction of benefits was improper. As such, pre-judgment interest is necessary to make the Plaintiff whole.

  No provision in ERISA specifies the appropriate interest rate for pre-judgment interest. As such, Georgia's statutorily mandated post-judgment interest rate can guide the Court's decision. See Florence Nightingale Nursing Service, Inc., 41 F.3d at 1484 (applying Alabama's interest statute in ERISA case); Smith v. American International Life Assurance Co. of New York, 50 F.3d 956, 958 (11th Cir. 1995) (applying interest of prime rate furnished by the Federal Reserve on the day judgment

was entered plus 3 percent as specified by O.C.G.A. § 7-4-12). The Defendant does not dispute the application of the Georgia statutory rate, and it should apply here.

The Plaintiff thus calculates the prejudgment interest to be $461.73. The Defendant only contests the award of pre-judgment interest generally, and does not contest the calculated amount of the interest. Additionally, the Plaintiff seeks $827.78 in various costs. (Hughes 01/27/09 Decl. ¶ 6). The Plaintiff's motion with regards to such interest and fees should be granted.

C. Calculation of Attorney's Fees

1. The Loadstar Amount

The Plaintiff seeks a total attorney's fee award of $57,707.69. (Hughes 02/25/09 Decl. ¶ 5). Although the Defendant opposes the award of attorney's fees, it does not dispute the amount requested. Nevertheless, the Eleventh Circuit mandates "that a court's order on attorney's fees must allow meaningful appellate review." Coastal Fuels Marketing, Inc. v. Florida Exp. Shipping Co., Inc., 207 F.3d 1247, 1252 (11th Cir. 2000).

In Hensley v. Eckerhart, 461 U.S. 424, 433-37 (1983), and Blum v. Stenson, 465 U.S. 886, 896-97 (1984), the Supreme Court established the framework and methodology for calculating the amount of a reasonable attorney's fee award. The starting point for calculating a reasonable attorney's fee is "the number of hours

reasonably expended on the litigation multiplied by a reasonable hourly rate" for the attorneys' services. Hensley, 461 U.S. at 433; Blum, 465 U.S. at 897; accord ACLU of Ga. v. Barnes, 168 F.3d 423, 427 (11th Cir. 1999). The determination of a reasonable hourly rate and number of compensable hours has long been aided by the factors laid out in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974). These twelve factors include: (1) the time and labor required; (2) the novelty and difficulty of the legal questions; (3) the necessary skill of the attorney; (4) the preclusion of other employment by the attorney due to the case; (5); the customary fee; (6) whether the attorney charges a fee on a fixed or contingent basis; (7) the time limitations imposed by the client or other circumstances; (8) the financial amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the attorney's professional relationship with the client; and (12) awards in like cases. Bivins v. Wrap It Up, Inc., 548 F.3d 1348, 1350 n.2 (11th Cir. 2008).

The product of the reasonable hourly rate and compensable time yields the "lodestar" amount. Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 563 (1986). The court must next consider the necessity for an adjustment based upon the results obtained. If the result was excellent, then the court should compensate for all hours reasonably expended. If the result was partial or

limited success, then the lodestar must be reduced to an amount that is not excessive. Norman v. Housing Authority of City of Montgomery, 836 F.2d 1292, 1302 (11th Cir. 1988).

The fee applicant is the party that "bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." Id. at 1303; Barnes, 168 F.3d at 427; accord Coastal Fuels Marketing, Inc. v. Florida Exp. Shipping Co., Inc., 207 F.3d 1247, 1252 (11th Cir. 2000).

> That burden includes supplying the court with specific and detailed evidence from which the court can determine the reasonable hourly rate. Further, fee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity. . . . A well-prepared fee petition also would include a summary, grouping the time entries by the nature of the activity or stage of the case.

Barnes, 168 F.3d at 427 (quotation marks omitted). These obligations of the fee applicant are especially important in cases where the applicant has only partially succeeded in the suit. Hensley, 461 U.S. at 437.

Similarly, a party opposing a fee application also has obligations. Its objections and proof must be specific and "reasonably precise." Id. at 428. When the parties fulfill their obligations, this assists the court in fulfilling its duty to render an order that articulates both its decisions and reasons for the decisions, thus allowing for meaningful appellate review. Id. at 428-29; see also N.A.A.C.P. v. City of Evergreen,

Ala., 812 F.2d 1332, 1335 (11th Cir. 1987) ("A prerequisite for our review of an attorney's fee award is that the district court's opinion must have explained the reasons for the award with 'sufficient clarity to enable an appellate court to intelligently review the award.'"). In this case, the Defendant has not made reasonably precise objections to the fee application.

      a.  <u>Reasonable Hourly Rate</u>

"[T]he starting point in any determination for an objective estimate of the value of a lawyer's services is to multiply hours reasonably expended by a reasonable hourly rate." <u>Norman</u>, 836 F.2d at 1299. Reasonable hourly rates are to be measured by the "prevailing market rates in the relevant community." <u>Blum v. Stenson</u>, 465 U.S. 886, 895 (1984). Prevailing market rates are those rates that are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. <u>Id.</u> at 895 & n.11; <u>Barnes</u>, 168 F.3d at 436. The applicant attorney's customary billing rate for fee-paying clients ordinarily is the best evidence of his market rate, although that information is not necessarily conclusive. <u>Dillard v. City of Greensboro</u>, 213 F.3d 1347, 1354-55 (11th Cir. 2000) ("What [the attorney] charges clients is powerful, and perhaps the best, evidence of his market rate; that is most likely to be what he is paid as 'determined by supply and demand.'"); see also <u>National Ass'n of Concerned Veterans v. Secretary of Defense</u>, 675 F.2d

1319, 1325 (D.C. Cir. 1982) ("The best evidence would be the hourly rate customarily charged by the affiant himself or by his law firm."). A fee applicant also may provide opinion evidence of reasonable rates, which is commonly done by submitting affidavits of other attorneys in the relevant legal community. Duckworth v. Whisenant, 97 F.3d 1393, 1396-97 (11th Cir. 1996). Finally, the court may utilize its own personal experiences and expertise to assess the lawyering skills exhibited during the pendency of the case. Id. at 1397 ("This court has also been given ample opportunity to assess the lawyering of this case for the Plaintiff."). But the court cannot simply substitute its own judgment for uncontradicted evidence without an explanation and record support. N.A.A.C.P. v. City of Evergreen, Ala., 812 F.2d 1332, 1334-36 (11th Cir. 1987).

The Plaintiff's evidence in support of the motion consists of Mr. Hughes's affidavit and the attached time records. The strongest evidence of reasonable fees is the attorney's market rate. See Dillard, 213 F.3d at 1354-55. "Satisfactory evidence at a minimum is more than the affidavit of the attorney performing the work. [The affidavit] necessarily must speak to rates actually billed and paid in similar lawsuits. Testimony that a given fee is reasonable is therefore unsatisfactory evidence of market rate." Norman, 836 F.2d at 1299 (citing Blum, 465 U.S. at 896 n.11). The Plaintiff has failed to provide any supporting evidence here. Instead, Mr. Hughes, a partner

with 27 years of experience, testifies that his rate is currently $310 per hour; that Mark Waschak (of counsel with 17 years of experience) billed at a rate of $260.00 per hour; and Christopher Adams (paralegal with 19 years experience) billed at $130.00 per hour. (Hughes 01/27/09 Decl. ¶ 4; Hughes 02/25/09 Decl. ¶ 4). The Court finds that these rates – unchallenged by the Defendant – are reasonable given the attorneys' education and experience. This is based upon my personal knowledge of what Atlanta lawyers of equal or greater experience charge for their services in civil litigation.

    b. <u>Reasonable Hours</u>

"Fee applicants must exercise what the Supreme Court has termed 'billing judgment.'" <u>Barnes</u>, 168 F.3d at 428. This means that "[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary" because, for example, the case is overstaffed. <u>Hensley</u>, 461 U.S. at 434. As to the work performed, compensable activities include pre-litigation services in preparation of filing the lawsuit, background research and reading in complex cases, productive attorney discussions and strategy sessions, negotiations, routine activities such as making telephone calls and reading mail related to the case, monitoring and enforcing the favorable judgment, and even preparing and litigating the request for attorney's fees. See <u>City of Riverside v. Rivera</u>, 477 U.S. 561, 573 n.6 (1986) (allowing compensation for productive

attorney discussions and strategy conferences); Webb v. Board of Educ. of Dyer County, Tenn., 471 U.S. 234, 243 (1985) (allowing compensation for pre-litigation services in preparation of suit); Cruz v. Hauck, 762 F.2d 1230, 1233-34 (5th Cir. 1985) (allowing compensation for preparing and litigating fee request); Adams v. Mathis, 752 F.2d 553, 554 (11th Cir. 1985) (holding that measures to enforce judgment are compensable); New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1146 & n.5 (2d Cir. 1983) (allowing compensation for background research and reading in complex cases); Brewster v. Dukakis, 544 F. Supp. 1069, 1079 (D. Mass. 1982) (compensating for negotiation sessions), aff'd as modified, 786 F.2d 16, 21 (1st Cir. 1986); In re Agent Orange Product Liability Litigation, 611 F. Supp. 1296, 1321-48 (E.D.N.Y. 1985) (compensating routine activities such as telephone calls or reading mail that contribute to the litigation). Reasonable travel time of the prevailing party's attorneys ordinarily is compensated on an hourly basis, although the rate may be reduced if no legal work was performed during travel. Johnson v. University College of University of Alabama in Birmingham, 706 F.2d 1205, 1208 (11th Cir. 1983). As with attorneys' work, the hours expended by paralegals, law clerks, and other paraprofessionals are also compensable to the extent these individuals are engaged in work traditionally performed by an attorney. Missouri v. Jenkins by Agyei, 491 U.S. 274, 285 (1989);

Jean v. Nelson, 863 F.2d 759, 778 (11th Cir. 1988). In short, "with the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under section 1988" and "the standard of reasonableness is to be given a liberal interpretation." N.A.A.C.P. v. City of Evergreen, Ala., 812 F.2d 1332, 1337 (11th Cir. 1987) (quoting Dowdell v. City of Apopka, Florida, 698 F.2d 1181, 1192 (11th Cir. 1983)).

The Eleventh Circuit has stated that its decisions regarding attorney's fees "contemplate a task-by-task examination of the hours billed" and that applicants should "show the time spent on the different claims." Barnes, 168 F.3d at 427, 429. The Eleventh Circuit has also stated that where a fee application and supporting documents are voluminous, a district court is not required to engage in an hour-by-hour analysis of the fee award. Loranger v. Stierheim, 10 F.3d 776, 783 (11th Cir. 1994). In such cases, it is sufficient for the district court to determine the total number of hours devoted to the litigation and then reduce that figure by an across-the-board percentage reduction if such a reduction is warranted. Id. The Eleventh Circuit has even intimated that such a method may be the preferred course with a voluminous fee request to avoid waste of judicial resources. Id. The Supreme Court has also stated:

> The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited

success. The court necessarily has discretion in making this equitable judgment. This discretion, however, must be exercised in light of the considerations we have identified.

Hensley, 461 U.S. at 436-37; accord Popham v. City of Kennesaw, 820 F.2d 1570, 1581 (11th Cir. 1987) ("[T]he Supreme Court explicitly stated that a court could simply reduce the award to account for the plaintiff's limited success instead of eliminating hours specifically expended on unsuccessful claims."); Bivins, 548 F.3d at 1351-52 (as a general rule, district court should not conduct both hour-by-hour analysis and further global percentage reduction in hours). The Plaintiff's attorneys billed 380.62 hours. Having reviewed the records submitted, the Court finds the billing judgment to be reasonable. The attorney's fees requested should be granted in full.

### III. Conclusion

For the reasons set forth above, the Plaintiff's Motion for Attorney's Fees [Doc. 34] is GRANTED.

SO ORDERED, this 6 day of August, 2009.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge